## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EDMOND K. MACHIE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-09-2196 |
| J. THOMAS MANGER, *et al.*, | * | |
| Defendants. | * | |

**************************************************************************

## **MEMORANDUM OPINION**

Edmond K. Machie filed this case against Montgomery County Police Chief J. Thomas Manger, Nancy Demme, Officer Pak, and Officer K. C. Haak, on July 22, 2009, and amended his Complaint on November 25, 2009. Currently pending before the Court are Defendants' Motion for Extension of Time to Respond to Plaintiff's Amended Complaint (Docket No. 16), Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 18), Plaintiff's Motion to Extend the Time for Plaintiff to Respond to Defendant's Motion (Docs. Nos. 20 & 21), and Plaintiff's Motion for Appointment of Federal Counsel (Doc. No. 23). The Court has reviewed the entire record, as well as the pleadings, with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT Defendants' Motion for Extension of Time to Respond to Plaintiff's Amended Complaint, GRANT Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 18), GRANT Plaintiff's Motion to Extend the Time for Plaintiff to Respond to Defendant's Motion (Docs. Nos. 20 & 21), and DENY Plaintiff's Motion to Appoint Counsel (Doc. No. 23).

1

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are derived from the Complaint and, to the extent that it is consistent with the Complaint, from the Maryland District Court for Montgomery County Charge Statement of Probable Cause ("Statement of Probable Cause"), which Plaintiff attaches to his Complaint. This case arises out of Plaintiff Edmond Machie's ("Machie") charge of conspiracy to commit theft of over $500 and subsequent arrest. In December 2007, the Montgomery County Police Department hired Plaintiff as an intern. On January 9, 2008, United States Currency over $574,500.00 was stolen from BB&T Bank in violation of Maryland law. On January 12, 2008, a Judicial Officer of the District Court of Maryland for Montgomery County, upon the Complaint of Officer Pak, charged Plaintiff with conspiracy to commit theft of more than $500 based on his alleged involvement in the BB&T Bank theft.

Plaintiff was first questioned by police regarding the incident on January 11, 2008, at 9:00 p.m. According to the Statement of Probable Cause, members of the Montgomery County Police questioned Plaintiff after a Montgomery County Police surveillance team observed Machie at the location where the suspected conspirators had allegedly brought money stolen from BB&T Bank.[1] Plaintiff then agreed to go to the Wheaton District Station with the police to assist with the investigation. Officer Pak questioned Plaintiff at the station for a period of about four hours, and Machie signed a statement around 2:15 a.m. and returned to his home. Though Plaintiff does not mention what the statement said, the Statement of Probable Cause indicates that at some point, Plaintiff advised Officer Haak that he had been in the apartment with two of the suspects. A search of that apartment revealed "a large amount of money" stashed there. (Doc. No. 14, Ex. A.) At 2:50 a.m., Plaintiff called the Montgomery County Police Department, and

---

[1] Plaintiff states that "members of the FBI" questioned him, but the Statement of Probable Cause, and Plaintiff's later assertions, indicate that the questioners were actually members of the Montgomery County Police.

Commander Nancy Demme asked him to retrieve a copy of his statement at the police station. At 3:30 a.m., after Plaintiff had reported to the police station to retrieve a copy of the statement, Officer Haak and Montgomery County Police Chief J. Thomas Manger asked for Plaintiff's police identification, violently grabbed and handcuffed him, and arrested him. Machie was then transported to the Central Processing Unit and charged with conspiracy to commit theft of over $500, and released on bond on January 12, 2008. On that day and during the following week, various newspapers reported that Plaintiff had been charged with conspiracy to commit theft of over $500. On April 14, 2008, the District Court of Maryland for Montgomery County entered a plea of *nolle prosequi* on Plaintiff's charge.

Plaintiff filed this suit on July 22, 2009, in the United States District Court for the District of Columbia, and it was transferred to this Court on August 21, 2009. On November 12, 2009, this Court granted Defendants' Motion for More Definite Statement, directing Plaintiff to include identifying information in the Complaint such as the date, names of defendants, and location of the events.

## STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make

clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court also notes that complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) The Fourth Circuit does "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain 'more than labels and conclusions,'" however. *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1965).

# ANALYSIS

## 1. Motions for Extension of Time

First, Defendants move for an extension of time to file a response to provide time to investigate the additional facts Plaintiff alleged in the Amended Complaint. The Court believes that a grant of additional time to Defendants to investigate the details Plaintiff provided in the Amended Complaint is appropriate. The Court believes that Defendant has set forth an adequate basis for its request for an extension of time to respond to Plaintiff's Amended Complaint, and thus the Court will grant that Motion.

Next, though the reason for Plaintiff's request for an extension of time to file a response to Defendants' Motion to Dismiss is not entirely clear to the Court, the Court believes that in this case, granting the extension will serve the interest of justice as Plaintiff has been proceeding *pro se*. Accordingly, the Court will grant Plaintiff's Motion to Extend the Time for Plaintiff to Respond to Defendant's Motion.

## 2. Plaintiff's Motion for Appointment of Counsel

The Court next addresses Plaintiff's Motion for Appointment of Federal Counsel. In that Motion, Plaintiff reiterates and resubmits his Motion for Appointment of Counsel which this Court previously denied. Plaintiff also attaches a letter from a Catholic Charities employee stating that she believes, based on Plaintiff's representations of the stress his work on this case has caused him, that appointment of counsel would be beneficial to him. Plaintiff has not presented arguments to convince the Court to reverse its earlier position or demonstrate that appointment of counsel has become more urgent in this case. As the Court explained in its previous Order on this request (Doc. No. 13), civil litigants do not have a constitutional or

statutory right to an attorney in a civil case, and the Court does not believe that this case warrants appointment of counsel.[2]

### 3. Defendant's Motion to Dismiss

Finally, the Court addresses Defendants' Motion to Dismiss Plaintiff's Amended Complaint. In Plaintiff's Amended Complaint he makes claims of false arrest and illegal charge pursuant to 42 U.S.C. § 1983 (Count 1), libel (Count 2), slander (Count 3), and torture (Count 4). Defendants move to dismiss Plaintiff's Amended Complaint on the ground that Plaintiff has failed to state sufficient facts to support these claims. The Court believes that Plaintiff's vague allegations fail to establish facts necessary to make out any of his claims, and do not "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1965. Accordingly the Court will grant Defendants' Motion to Dismiss.

#### a. Section 1983 (Count 1)

Plaintiff's first claim is for false arrest and illegal charge in violation of 42 U.S.C. § 1983. Defendants move to dismiss this claim on the ground that Plaintiff fails to assert what rights were violated. Section 1983 states in pertinent part, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress." 42 U.S.C. § 1983. A plaintiff cannot recover under § 1983 alone. Section 1983 is merely a vehicle to assert violations of federal statutory or constitutional rights. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *McCoy v. Robinson*, No. 97-2023, 1998 WL 10373, at *2 (4th Cir. Jan. 14, 1998) ("To state a cognizable claim under § 1983, a plaintiff must demonstrate a violation of a clearly established statutory or constitutional right.").

---

[2] The Court notes that while it has been considering this ripe motion, counsel for Plaintiff has entered an appearance.

6

When examining a federal law, a court determines whether Congress has foreclosed an expressed or implied right of action. *Blessing*, 520 U.S. at 341. "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* Accordingly, if a plaintiff's § 1983 claim fails to allege a violation of a valid, federally-protected right giving rise to an enforceable right of action, a court must grant the dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

The Court believes that the Amended Complaint only vaguely details what rights Plaintiff alleges Defendants violated, despite the Court's direct instructions that Plaintiff amend the Complaint to clarify his allegations. It is unclear what federal rights Plaintiff invokes by claiming "false arrest" and "illegal charge." Construing Plaintiffs arguments most liberally, the Court believes that Plaintiff is asserting violations of his Fourth Amendment rights of freedom from unreasonable search and seizure and freedom from excessive force, and violation of 18 U.S.C. § 1001. The Court finds that Plaintiff has not asserted a valid claim for violation of any of these rights.

Plaintiff claims that Officer Pak "executed an erroneous and false complaint," which led to his arrest "without a warrant," and led to his imprisonment. (Doc. No. 14 ¶ 12.) Plaintiff states that "charges alleged in the complaint were wholly untrue and false." (Doc. No. 14 at 16.) To the extent that Plaintiff is merely protesting Officer Pak's incorrect assertion that Machie was a co-conspirator in the BB&T Bank theft, his allegations fall short of a violation of the Fourth Amendment. Officers obviously do not violate Fourth Amendment rights every time they make an incorrect charge.

To the extent Plaintiff claims that Officer Pak lacked probable cause to apply to charge Plaintiff with conspiracy to commit theft of over $500, the Court believes Plaintiff has not alleged sufficient facts to make out this claim. From the face of the Statement of Probable Cause, Officer Pak's probable cause to believe Plaintiff was a co-conspirator was that Plaintiff had admitted that he was in the apartment with two suspected co-conspirators "immediately after [one] was seen carrying the large bag to the rear of" the apartment, and a later search of the apartment led to the discovery of a large sum of money there. (Doc. No. 14 Ex. A.) "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents . . . [T]he reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." *Delaware v. Prouse*, 440 U.S. 648, 653-655 (U.S. 1979) (citations omitted). "[T]he probable-cause standard is . . . a 'practical, nontechnical conception.' 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life.'" *Illinois v. Gates*, 462 U.S. 213, 231 (U.S. 1983) (citations omitted). Plaintiff does not dispute the specific facts of the Probable Cause Statement which formed the basis for Plaintiff's charge—that Police observed Machie with another conspirator at the location where the conspirators had allegedly immediately previously brought the stolen money and Machie voluntarily admitted to being in the apartment where co-conspirators had brought the money. It does not appear to the Court that Plaintiff is alleging that he was not actually present at the apartment with the co-conspirators on the night one co-conspirator delivered money there. Absent some statement in the Complaint of why these police observations, Plaintiff's signed

statement, and Plaintiff's answering questions did not allow the officers to establish probable cause for his charge, Plaintiff fails to establish a violation of the Fourth Amendment. Inasmuch as the facts Plaintiff alleges in his Amended Complaint are insufficient to survive a Motion to Dismiss, this claim fails.

Next, Plaintiff states Officer Haak "violently grabbed and handcuffed" him. (Doc. No. 14 at ¶ 11.) In assessing whether a police officer's use of force in effecting an arrest is reasonable under the Fourth Amendment, the Court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Conner*, 490 U.S. 386, 396-97 (1989) (citations omitted). There is not an outright ban on a police officer's use of force, but rather, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* The police officer's grab of Plaintiff to put handcuffs on him, in the style alleged here, does not rise to the level of excessive force. A police officer must make some contact with a person to effect an arrest, and Plaintiff has not provided anything more than the conclusory allegation that the grab was "violent" to support a claim that the officer's force here was excessive. Because Plaintiff has not provided any specific details that could give rise to an excessive force claim, the Court cannot allow this claim to proceed.

Finally, Plaintiff indicates that he believes Officer Pak made false statements in his complaint, and that Officer Pak thus violated 18 U.S.C. § 1001. But, Plaintiff has failed to allege the minimum elements required for a showing of a violation of this statue, as Plaintiff has not alleged that Officer Pak made his allegedly false statement knowingly or willfully, which the statute requires. 18 U.S.C. § 1001 (providing for punishment of "whoever in any matter within

the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation"). Thus, Plaintiff, for this reason at a minimum, cannot make a claim for violation of this statute. Accordingly, the Court sees no sufficient allegations of violations of a federal right that would support a claim under Section 1983.

### b. Libel (Count 2) and Slander (Count 3)

The Court also agrees with Defendants that the Court should dismiss the claims arising under state law because based on the record presented, it appears that Plaintiff failed to provide timely notice to the County as required by the Local Government Tort Claims Act ("LGTCA"). *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304. Pursuant to the LGTCA, a party may not bring an action for unliquidated damages against a local government or its employees unless that party provided notice of the claim to the County within 180 days after the injury. Md. Code Ann., Cts. & Jud. Proc. § 5-304. In other words, the notice requirement is a "condition precedent to the right to maintain an action for damages." *Grubbs v. Prince George's County*, 297 A.2d 754, 755 (Md. 1972). The LGTCA's notice requirement applies "to all torts without distinction, including intentional and constitutional torts." *Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. Ct. Spec. App. 1997). Despite this notice requirement, a court can entertain a lawsuit where the plaintiff can show good cause for failure to provide the required notice. Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

The articles Plaintiff alleges were slanderous and libelous were published mostly around the time of his charge on January 12, 2008, and the latest date of publication of an article was February 15, 2008. Pursuant to the LGTCA, Plaintiff should have provided notice to the County by August 13, 2008. It appears that Plaintiff submitted a Complaint to Montgomery County

10

Department of Police on June 6, 2009, nearly ten months past the deadline for providing notice. (Doc. No. 14, Ex. D.) Plaintiff offers no explanation of good cause for his failure to file notice with the County. Therefore, the Court determines that Plaintiff cannot continue to seek recovery under Counts Two or Three of his Amended Complaint. The Court therefore dismisses these claims.

Additionally, the Court agrees that Maryland law clearly requires that "[a]n action for assault, libel, or slander [] be filed within one year from the date it accrues," Md. Code Ann. Cts. & Jud. Proc. Sec. 5-105 (2009). Accordingly, because the latest date of publication of an allegedly slanderous or libelous article was February 15, 2008, and Plaintiff did not bring his claims until over one year later, on July 22, 2009, his defamation claims are time-barred.

In any case, Plaintiff falls far short of making a prima facie case of either libel or slander. To show either tort, "the plaintiff must show (1) that the defendant made a defamatory communication . . . ; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Kairys v. Douglas Stereo, Inc.*, 83 Md. App. 667, 678 (Md. Ct. Spec. App. 1990). The defamatory communication Plaintiff alleges is that the Defendants stated Plaintiff had been charged with conspiracy to commit theft of more than $500. But, Plaintiff concedes, and the record shows, that Plaintiff actually was charged with conspiracy to commit theft. (Doc. No. 24 at 7-8.) To the extent that Plaintiff seeks redress for his alleged mistaken charge, claims of libel and slander are not appropriate. Thus, because Plaintiff has not alleged that Defendant published false information in the newspaper articles he attaches in Exhibit B to his Amended Complaint, Plaintiff cannot make out a prima facie case of either slander or libel, and those claims must be dismissed.

### c. Torture (Count 4)

Defendants move to dismiss Plaintiff's final claim for "torture" as Plaintiff has failed to specify any state or federal cause of action in this Count. Plaintiff states the Defendants "seriously tortured the PLAINTIFF after he was handcuffed and placed under arrest." (Doc. No. 14 at 10.) This bald allegation, without any further detail, does not satisfy the heightened pleading standard Plaintiff must meet to survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's conclusory allegations do not provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court has already allowed Plaintiff to amend his Complaint to provide more detail on his claims. Moreover, to the extent that Plaintiff makes a claim of excessive force in Count Four, the Court has already addressed this argument above. Because the Plaintiff has not alleged sufficient facts to make out a cause of action for torture, the Court must dismiss this claim.

### CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Extension of Time to Respond to Plaintiff's Amended Complaint, GRANT Defendants' Motion to Dismiss Plaintiff's Amended Complaint, GRANT Plaintiff's Motion to Extend the Time for Plaintiff to Respond to Defendant's Motion, and DENY Plaintiff's Motion to Appoint Counsel (Doc. No. 23). An Order consistent with this Memorandum Opinion will follow.

<u>May 25, 2010</u>                                             <u>      /s/      </u>
Date                                                                    Alexander Williams, Jr.
                                                                               United States District Judge