IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **EDMOND K. MACHIE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )    **Civil Action No. AW-09-2196** |
| | ) |
| **J. THOMAS MANGER, ET AL.** | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION

Before this Court are Defendants' Motion To Revise Scheduling Order (ECF No. 61) ("Motion I") and Defendants' Motion To Strike Plaintiff's Experts, Or In The Alternative, Motion For Leave Of Court To Name Expert And Motion To Revise Scheduling Order (ECF No. 63) ("Motion II") (collectively, the "Motions"). The Court has reviewed the Motions, memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court GRANTS IN PART the Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following facts in the Second Amended Complaint. On or about January 9, 2008, an individual dressed as a security guard robbed BB&T Bank. Second Am. Compl. ¶ 11 (ECF No. 36). The police were only given a description of "a dark skinned black male." *Id.* ¶ 12 (internal quotation marks omitted). The police obtained search warrants for bank employees Charlyn Abayomi-Cole's and Elizabeth Tarke's homes. *Id.* ¶ 13. On or about January 11, 2008, officers alleged that they saw David Mbom visit Ms. Tarke's home, and thereafter saw Mr. Mbom ride in vehicle driven by Robert Lataw to 11620 Stewart Lane #102. *Id.* ¶ 14. The "surveillance team" asserted that they saw Plaintiff at the Stewart Lane address with Mr. Lataw. *Id.* ¶ 15. Plaintiff denies being "with" Mr. Lataw and alleges that he "has never

1

associated with" Mr. Lataw or Mr. Mbom. *Id*. ¶¶ 15-16. Plaintiff admits that he "may have been present in the same general area as those individuals" to purchase Cameroonian food from a woman "who may be located in the same area or building." *Id*. ¶ 17.

When Plaintiff arrived home, six or seven officers approached Plaintiff, some of whom may have been FBI agents. *Id*. ¶ 18. They searched his vehicle without his consent and after learning that Plaintiff was an intern with Montgomery County Police, informed him that "he was not under arrest and requested his 'assistance' in the investigation." *Id*. ¶ 19. The officers then transported Plaintiff to the Wheaton Police Station, where Defendant Pak, an Officer, questioned Plaintiff for five hours, until approximately 2:15 a.m. *Id*. ¶ 20. Defendant Pak was "very confrontational and aggressive" and "ridiculed" Plaintiff. *Id*. ¶ 22. Plaintiff signed a statement at the end of the questioning and left the station. *Id*. ¶ 24. Plaintiff alleges that he "did not think he had a choice of whether [to] sign the statement." *Id*. ¶ 24.

At approximately 2:50 a.m., Plaintiff called Commander Nancy Demme to obtain a copy of the statement. *Id*. ¶ 27. Ms. Demme asked Plaintiff to return to the station to pick up the statement. *Id*. While waiting for his copy, at approximately 3:30 a.m., Defendant Haak, an Officer, pushed Plaintiff against the wall, "grabbed [him,] and demanded his identification." *Id*. ¶ 28. Defendant Haak and Police Chief Manger then grabbed Plaintiff and handcuffed him in a "tight and painful manner," twisted his arms, and pushed him against the wall again. *Id*. ¶¶ 29-30. Plaintiff felt dizzy and "the blood not flowing through his wrists." *Id*. ¶ 32. Plaintiff requested an attorney, but the officers continued to question him. *Id*. ¶ 34.

Defendant Pak stated in his Statement of Probable Cause, dated January 12, 2008, that Plaintiff informed Defendant Haak that Plaintiff was in apartment 102 with Mr. Tataw and Mr. Mbom; however, Plaintiff denies that he made these statements. *Id*. ¶¶ 36-37. Plaintiff alleges

that he had "merely stated that he was in the same apartment complex." *Id*. (emphasis omitted). Plaintiff was charged with conspiracy to commit theft of over $500 on January 12, 2008. *Id*. ¶ 39. Plaintiff was imprisoned for four hours and then released on bail. *Id*. Montgomery County entered a *nolle prosequi* on April 10, 2008, the date of Plaintiff's trial. *Id*. ¶ 45.

Plaintiff alleges that because of the charge against him, he "was evicted from his apartment, his bank closed his accounts there, he was unable to find work . . . , [and he] is facing removal and deportation." *Id*. ¶ 40. He also states that he lost his scholarship to The Catholic University of America and present and future undefined contracts. *Id*. ¶ 44.

On these allegations, Plaintiff brought 13 claims against Defendants in his Second Amended Complaint. Judge Williams dismissed Counts I-IX and Counts XI-XIII and dismissed all Counts against Defendants Demme and Montgomery County. Nov. 4, 2010 Order (ECF No. 42). Thus, only "the following claims from Count X (section 1983 claims based on Fourth Amendment violations) remain: excessive-force claims against Defendants Haak and Manger, and claims against Defendant Pak that remain somewhat ambiguous relating to seizure and interrogation without a warrant or probable cause." *Id*.

Pursuant to the Court's Scheduling Order, Plaintiff was required to provide his 26(a)(2) expert disclosures by January 21, 2011. Nov. 22, 2010 Order (ECF No. 43). By March 14, 2011, the parties were required to provide their "Rule 26(e)(2) supplementation of disclosures and responses." *Id*. Plaintiff did not identify any experts by these deadlines.

On March 23, 2011, Defendants Pak and Haak served interrogatories on Plaintiff "seeking names, opinions and supporting documents of all liability and damages experts." Motion II 1. On July 5, 2011, in response to Haak Interrogatory 12, Plaintiff identified Jessica Chan, LCSW as an individual who examined or treated him "as a result of the injuries allegedly

received in this incident." Opp'n to Motion II Ex. 3 at 8. Plaintiff objected to Haak Interrogatory 14, which requested Plaintiff to identify experts; but identified Ms. Chan pursuant to Rule 26(a)(2)(A). Opp'n to Motion II Ex. 3 at 9. Further, Plaintiff identified Ms. Chan in response to Haak Interrogatory 16; Manger Interrogatories 5, 8, 16, and 18; and Pak Interrogatory 21. Opp'n to Motion II Ex. 3 at 10; Ex. 4 at 4, 5-6, 11, 12; Ex. 5 at 12.

Plaintiff admits, however, that in response to Pak Interrogatory 18, seeking identification of experts, Plaintiff stated "[n]one at this time," and did not object as he did in response to other similar interrogatories regarding identification of experts. *Compare* Opp'n to Motion II Ex. 5 at 11 (Pak Interrogatory 18) *with* Opp'n to Motion II Ex. 3 at 9 (Haak Interrogatory 14), *and* Opp'n to Motion II Ex. 4 at 4 (Manger Interrogatory 5), *and* Opp'n Ex. 4 at 12 (Manger Interrogatory 18). Additionally, in response to Pak Interrogatory 21, Plaintiff identified Ms. Chan as a non-expert witness. Opp'n to Motion II Ex. 5 at 12. Plaintiff now claims that he erroneously responded to Defendant Pak's Interrogatories 18 and 21. *See* Opp'n to Motion II 8-9.

On January 6, 2012, the last day of discovery, Plaintiff sent supplemental responses to Defendants Pak's and Defendant Haak's interrogatories with 30 pages of medical records. Motion II 1-2. In his supplemental responses to Pak Interrogatory 18 and Haak Interrogatory 14, Plaintiff identified two expert witnesses, who Plaintiff "expected to testify to the severe distress suffered by Plaintiff as a result of Defendants' actions:" Ms. Chan and Jennifer Wells, LCSW. Motion II Ex. 1 at 4; Ex. 2 at 8-9. Plaintiff listed the ailments that he allegedly suffers. Motion II Ex. 1 at 4. Discovery closed January 6, 2012, requests for admission were due January 12, 2012, and the dispositive pretrial motions deadline was February 6, 2012. Nov. 16, 2011 Order (ECF No. 60).

**DISCUSSION**

Defendants seek to strike Plaintiff's experts and the "documents the experts relied on." Motion II 3. Defendants argue that Plaintiff should not be permitted to present an expert and these documents at trial because Plaintiff did not disclose an expert within the time frame required by the Scheduling Order. Motion II 3. Alternatively, Defendants ask the Court to allow them to name an expert, to order Plaintiff to submit to a "medical examination," and to allow Defendants to take additional discovery. Motion II 3. In Motion I, Defendants also seek further time to potentially file a dispositive motion given that Plaintiff served additional medical documents on the last day of discovery. Motion I 1.

Rule 26(a)(2)(A) requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). If the expert "is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). In this case, the parties were required to make initial and supplemental disclosures by the deadlines set by the Court in its Scheduling Order.

Should a party fail to timely identify an expert or provide an expert report, Rule 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1). In addition or alternatively, on motion the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure; . . . may inform the jury of the party's failure; and . . . may impose other appropriate sanctions." *Id*. The advisory committee notes to Rule 37(c)

> emphasize that the "automatic sanction" of exclusion "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee note (1993). The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party. *See* 7 James Wm. Moore et al., *Moore's Federal Practice* §§ 37.60[2][b], 37.61 (3d ed. 2002). This is because "[p]reclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party." Fed. R. Civ. P. 37(c) advisory committee note (1993).

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (alteration in original).

The party who fails to timely disclose her expert or expert report bears the burden to "demonstrate substantial justification for her failure to comply." *Carr v. Deeds*, 453 F.3d 593, 604-05 (4th Cir. 2006). The Court has "'broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless.'" *Id*. at 602 (quoting *Southern States*, 318 F.3d at 597). The Fourth Circuit has held

> that in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States*, 318 F.3d at 597.

Because Plaintiff's expert opinions are helpful to Plaintiff, not Defendants, under Rule 37 the Court must strike the untimely-disclosed experts unless Plaintiff's failure to timely disclose the experts was substantially justified or harmless. Plaintiff does not provide such justification. Instead, Plaintiff argues that he timely disclosed one of his experts in his discovery responses and timely supplemented his discovery responses, Opp'n to Motion II 9; he "has suffered greatly economically" and "has been working to search for relevant documents and obtain all of the relevant information," Opp'n to Motion II 12; and Defendants supplemented their discovery responses in January 2012, some after the close of discovery.[1] Opp'n to Motion II 13.

These points do not adequately justify Plaintiff's failure to timely disclose his experts and provide the information required by Rule 26. This case is nearly three years old, and the incident at issue occurred in 2008. Plaintiff has had more than sufficient time to "search for relevant documents and obtain all of the relevant information." Additionally, given that the incident occurred in 2008, Plaintiff presumably knew the identities of his treating physicians, Ms. Wells and Ms. Chan, before the January 2011 expert designation deadline. If Plaintiff mistakenly failed to disclose them as experts in January 2011, Plaintiff could have asked the Court for leave to serve those disclosures late. Plaintiff also fails to explain why he did not identify Ms. Wells as Plaintiff's treating physician until the final day of discovery.

Further, although the Court accepts Plaintiff's claim that his treating physicians are "hybrid witnesses," *see Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500-01 (D. Md. 1997), Plaintiff's bare and non-specific interrogatory responses do not satisfy the Rule's disclosure

---

[1] The Court will set aside as moot Plaintiff's argument that Motion II should be denied because Defendants failed to file a Local Rule 104.7 Certificate. The Court ordered Defendants to comply with Local Rule 104.7 on April 6, and 12, 2012. *See* April 6, and 12, 2012 Orders (ECF Nos. 73, 74). Defendants substantially complied. *See* Defendants' Local Rule 104.7 Certificate (ECF No. 76).

requirements. Finally, Defendants' failure to timely supplement discovery is irrelevant to *Plaintiff's* obligation to follow this Court's Scheduling Order.

Although Plaintiff has not provided sufficient reasons for failing to timely disclose his two experts, after completing the *Southern States* factor analysis, the Court finds that Plaintiff's failure is harmless for three reasons. First, although Defendants may have been surprised to see Ms. Wells listed as an expert in Plaintiff's supplemental discovery responses, Defendants should not have been surprised to see Ms. Chan. Plaintiff identified Ms. Chan in his interrogatory responses as his treating physician, and Defendants were free to depose her before discovery closed. The Court understands, however, that Defendants may have decided not to depose Ms. Chan, expecting to argue that she should be excluded from trial due to Plaintiff's failure to properly designate her as an expert witness.

Second, Plaintiff can cure his failure to properly disclose these witnesses. Plaintiff can make these physicians available for depositions. The Court can give Defendants the opportunity to designate experts to opine on the alleged "severe distress suffered by Plaintiff as a result of Defendants' actions." Mot. II Ex. 1 at 4. Plaintiff can then have the opportunity to depose Defendants' new expert(s).

Third, allowing the new evidence would not disrupt the trial. Trial has not been scheduled. This situation is not one in which a party is seeking to admit new expert opinions on the eve of trial. Additionally, Defendants are asking for time to propound additional discovery, showing that they do not mind delaying the discovery deadlines and trial.

Finally, the evidence is important to Plaintiff's case. Plaintiff claims that he incurred "severe distress" because of Defendants' actions, and whether Plaintiff in fact was damaged is a key issue in this case. Mot. Ex. 1 at 4. Thus, Plaintiff should be permitted to call his treating

physicians to testify to these topics.  However, the Court will not permit Plaintiff to designate experts other than those two disclosed in his interrogatory responses.  Further, as hybrid witnesses, Plaintiff's experts may only base their opinions on "information learned during the actual treatment of the patient [Plaintiff] – as opposed to . . . [information] subsequently supplied by an attorney involved in litigating [this] case." *Sullivan*, 175 F.R.D. at 501.

Additionally, the Court will not permit Defendants to conduct a "medical examination" of Plaintiff at this time.  To conduct a physical or mental examination of Plaintiff, Rule 35 of the Federal Rules of Civil Procedure requires Defendants to submit a motion demonstrating good cause for the examination.  Fed. R. Civ. P. 35 (an order requiring a party to submit to a physical or mental examination "may be made only on motion for good cause").  Good cause is present if the party's condition is necessary, not merely relevant, to the case.  *EEOC v. Maha Prabhu, Inc.*, No. 3:07-cv-111-RJC, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008) (citing *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962)).  "[N]ecessity . . . is the element that separates the procedures involving independent medical examinations and other tools of discovery."  *Id*. (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).  Good cause exists if "the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries."  *Id*. (citation omitted).  Good cause does not exist if the party could have obtained the information sought "through less invasive tools of discovery."  *Id*. (citation omitted).

Rule 35 also requires a party to show "that the mental or physical condition is truly 'in controversy.'"  *Id*. (citing Fed. R. Civ. P. 35).  A condition is "in controversy" if "the condition rises above the level of 'garden-variety' emotional distress."  *Id*. at *3.  Courts examine five factors in determining whether the condition is "in controversy": whether

>(1) the plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has claimed unusually severe emotional distress; (3) the plaintiff has alleged a specific type of disorder or other psychiatric injury; (4) the plaintiff has offered her own expert testimony to supplement her claim of emotional distress; or (5) the plaintiff concedes that her medical condition is "in controversy" pursuant to Rule 35.

*Id*. (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).

Although good cause may exist and Plaintiff's condition may be in controversy, Defendants have not *shown* these to be true in their Motions. Defendants have the burden to prove these elements. Defendants merely request a "medical examination." Motion II at 3. Additionally, Defendants do not even describe whether they are seeking a physical or mental examination, who will conduct the examination, the scope of the examination, and the condition and manner of the examination, all which the Court must specify in ordering a physical or mental examination. *See* Fed. R. Civ. P. 35(a)(2)(B). Thus, Defendants' request for a "medical examination" is denied without prejudice.

## **CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART the Motions. Within ten (10) calendar days of the date of this Memorandum Opinion and the accompanying Order, Plaintiff must submit to Defendants proper expert disclosures per Rule 26 and supplement his answers to interrogatories. After receiving Plaintiff's expert disclosures, Defendants shall have forty-five (45) calendar days to designate their experts and to provide expert disclosures as required by Rule 26(a), and shall have sixty (60) calendar days to depose Plaintiff's experts. Plaintiff shall have thirty (30) calendar days after receipt of Defendants' expert designation(s) to depose Defendants' expert(s). Each deposition is limited to one (1) calendar day without further leave of Court.

Defendants shall also have ten (10) calendar days from the date of this Memorandum Opinion and the accompanying Order to propound five (5) interrogatories on Plaintiff regarding the supplemental discovery delivered to Defendants on January 6, 2012.  The dispositive motions deadline is now September 30, 2012.

Should Defendants wish to conduct a mental or physical examination of Plaintiff, Defendants shall have twenty (20) calendar days from the date of this Memorandum Opinion and the accompanying Order to file a motion seeking such examination under Rule 35 of the Federal Rules of Civil Procedure.

June 07, 2012                                                                /s/
                                                                    Charles B. Day
                                                                    United States Magistrate Judge


CBD/mkh