IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EDMOND K. MACHIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. AW-09-2196 |
| | ) | |
| **J. THOMAS MANGER, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before this Court is Defendants' Motion To Order Plaintiff To Submit To Mental Examinations (ECF No. 79) (the "Motion"). The Court has reviewed the Motion, memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court GRANTS IN PART the Motion.

The relevant facts of this case are set out in the Court's last memorandum opinion on Defendants' Motion To Strike Plaintiff's Experts, Or In The Alternative, Motion For Leave Of Court To Name Expert And Motion To Revise Scheduling Order (ECF No. 63). *See* June 7, 2012, Mem. Op. (ECF No. 77).

In the Motion, Defendants seek an order requiring Plaintiff to submit to a mental examination to be conducted by Michael Spodak, M.D. Mot. 1; Defs.' Local Rule 104.7 Certificate ("Certificate") 2 (ECF No. 81). Defendants provide an "evaluation protocol outlining the proposed mental examination" (the "Evaluation Protocol"). Certificate 2, Ex. 2. The Evaluation Protocol articulates Dr. Spodak's "standard practice when performing a Psychiatric Forensic Evaluation (and/or IME)," which comprises approximately three to four hours of psychiatric interview and three to four hours of psychological tests and questionnaires. Certificate Ex. 2. The tests "typically consist[]" of four tests, which "[m]ay vary depending upon

1

age:" Minnesota Multiphasic Personality Inventory 2 (MMPI 2), Symptom Checklist 90 Revised (SCL 90 R), Depression/Hopelessness Inventory (BECK), and Millon Clinical Multiaxial Inventory-III (MCMI III).  *Id*.  Defendants are willing to work with Plaintiff to find a "mutually agreeable date" for the examination.  Certificate 3.

In response to the Motion, Plaintiff does not argue that Defendants have not shown good cause for the mental examination or that Plaintiff's mental condition is not in controversy.  Indeed, the Court finds that Defendants have shown good cause and that Plaintiff's mental condition is in controversy.  Rather, Plaintiff claims that the parties have resolved all but three issues concerning the Motion: (1) whether Defendants have sufficiently outlined the "manner, conditions, and scope of the examination;" (2) whether counsel can observe the examination; and (3) whether "Dr. Spodak should be ordered to produce his any [sic] report and his file by a date certain."  Pl.'s Mem. in Supp. of Pl.'s Response ("Pl.'s Mem.") 2-5 (ECF No. 83).  The Court will address each issue in turn.

**I. The Manner, Conditions, and Scope of the Examination are Appropriate.**

Plaintiff provides that he "will submit to a mental examination but only subject to reasonable conditions and restrictions relating to the manner, conditions, and scope of the examination."  Pl.'s Mem. 2-3.  Plaintiff claims that, currently, "the manner, conditions, and scope are unsettled and subject to change by Dr. Spodak at any time."  *Id*. at 3.  Plaintiff contends that the Evaluation Protocol provided by Dr. Spodak is insufficient because it provides only his "'standard practice,'" "what the psychological test battery 'typically consists of,'" and that the tests "'[m]ay vary upon age.'"  *See id*. at 2 (quoting the Evaluation Protocol).  Plaintiff argues that "if Plaintiff agrees to submit to the conditions in [the Evaluation Protocol] . . . , there will be no conditions in place at all."  *Id*.

2

Under Rule 35 of the Federal Rules of Civil Procedure, in ordering a party to submit to a mental examination, a Court "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). The Rule does not articulate the extent to which a party must describe the "manner, conditions, and scope of the examination." However, a few cases guide the Court on the specificity necessary. For example, in *Cline v. Firestone Tire & Rubber Co.*, 118 F.R.D. 588, 589 (S.D. W. Va. 1988), the District Court for the Southern District of West Virginia held that the defendants had "adequately informed" the plaintiffs of the scope of the psychological examination when defendants had only provided that "the neuropsychological examination will consist of: a neuropsychological examination, cognizant testing MMPI and Wechsler Memory Scale Revised (New)." Relatedly, in *Walton v. North Carolina Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2011 WL 883579, at *4 (E.D.N.C. Mar. 11, 2011), the District Court for the Eastern District of North Carolina ordered the plaintiff to submit to two mental examinations on mutually agreeable days, for no longer than eight hours on each day, at specified locations, to be conducted by particular doctors, and concerning "the nature, cause, and extent of plaintiff's alleged emotional or mental conditions." The court did not specify further the manner, conditions, and scope of the examinations.

The defendant in *Simon v. BellSouth Adver. & Publ'g Corp.*, No. 3:09-CV-177-RJC-DCK, 2010 WL 1418322, at *4-5 (W.D.N.C. Apr. 1, 2010), provided a few more details in its notice of mental examination. The notice identified:

> 1. Standard forensic psychiatric evaluation of Plaintiff, assessing pertinent background information including past personal history and experiences, psychiatric history, medical history, and Plaintiff's description of the nature and origin of his alleged psychiatric injury, and how it has unfolded over time to the present.

3

> 2. Psychological testing may include generally accepted, well-standardized paper-and-pencil tests, including the Minnesota Multiphasic Personality Inventory (MMPI-2), Personality Assessment Inventory (PAl), Beck Anxiety Inventory, Beck Depression Inventory – II, and the Mini-Mental State Examination (MMSE).

Def. BellSouth Adver. & Publ'g Corp. Mot. for Physical & Mental Examination Ex. 1 (No. 3:09-CV-00177-RJC-DCK, ECF No. 16). After reviewing the notice, the District Court for the Western District of North Carolina ordered plaintiff to submit to a mental examination "related to [p]laintiff's allegations of emotional distress-as described in the 'Notice.'" *Simon*, 2010 WL 1418322, at *5.

Here, Defendants provide that their expert would conduct a "standard forensic psychiatric evaluation." Reply 2. Defendants' expert would assess Plaintiff's "injuries and the nature and extent of the alleged disabling injuries which Plaintiff claims are causally related to the subject incident." Mot. 1-2. Those injuries include "severe emotional distress, depression, fear, suspicion, distrust, alcohol issues, preoccupation, anxiety and severe sadness." *Id*. at 1. Additionally, Defendants' Evaluation Protocol provides that Dr. Spodak would "obtain standard background information by way of interview and questionnaires, perform a psychiatric examination and obtain psychological testing." Certificate Ex. 2. The Evaluation Protocol further explained that the interview would take approximately 3-4 hours, and the testing would take approximately 3-4 hours. *Id*. The Evaluation Protocol also identified the four tests that Dr. Spodak may administer: the MMPI 2, SCL 90R, BECK, and MCMI III. *Id*. The Court finds that Defendants sufficiently articulated the manner, conditions, and scope of the mental examination.

**II. Counsel shall not Attend the Mental Examination.**

Plaintiff seeks to have counsel present during the mental examination because "Plaintiff will be more likely to be open and responsive in Dr. Spodak's examination" if Plaintiff's counsel is present (in part because English is not Plaintiff's first language); and allowing Plaintiff's counsel to attend, without meddling or controlling the examination, would help counsel in cross-examining Dr. Spodak. Pl.'s Mem. 3-4. Plaintiff consents to Defendants' counsel's attendance as well. *Id*. at 4.

In the District of Maryland, counsel may attend a physical or mental examination only if a party demonstrates a compelling need and good cause. *McKitis v. Defazio*, 187 F.R.D. 225, 228 (D. Md. 1999) ("absent a compelling determination of need . . . a party's counsel should not be permitted to attend a Rule 35 examination"); *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595, 598 (D. Md. 1960) ("The presence of the lawyer . . . is not ordinarily either necessary or proper; it should be permitted only on application to the court showing good reason therefor"); *see also Cline*, 118 F.R.D. at 589 (the Southern District of West Virginia held that "the proper rule is that Plaintiff's attorney should not be allowed to be present absent a showing of good cause" (citing *Dziwanoski*, 26 F.R.D. 595; *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543 (N.Y. 1978))). This high burden exists in part because

> [i]f plaintiff's counsel were permitted to attend, fairness would require the presence of defense counsel as well. *It is difficult to imagine a more disruptive result than to convert what is intended to be a medical examination into an adversary proceeding attended by counsel*, as other courts which have considered this issue have found. *See Warrick* [*v. Brode*], 46 F.R.D. [427,] . . . 428 [(D. Del. 1969)] ("The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry."); *see also Dziwanoski . . . ,* 26 F.R.D. 595 . . . (holding same).

*McKitis*, 187 F.R.D. at 228 (first emphasis added).

Plaintiff has not met his burden. Plaintiff has not presented any evidence that his alleged "paranoia and avoidance/fear of contact with law enforcement," Pl.'s Mem. 3, would impede Dr. Spodak's ability as a board certified psychiatrist to conduct a mental examination of Plaintiff. Plaintiff merely provides argument and refers to interrogatory responses in which he states that his experts will testify at trial that he has these conditions. *See id*. (citing to *id*. at Ex. 1 at 3-4). Further, as recognized by the *McKitis* court, if the Court permits counsel to observe the examination as suggested by Plaintiff, the examination could become more adversarial, and thus, more similar to an interaction with law enforcement that Plaintiff allegedly fears.

The Court is also unclear how counsel could ensure that Plaintiff would be "more open" during the examination, *see* Pl.'s Mem. 4 (emphasis omitted), without interfering with the examination. Relatedly, Plaintiff has not presented evidence that his counsel is a certified interpreter of French, Bafang, or Dschang, such that he could aid his client with translation during the examination, or that Plaintiff has such difficulty with the English language that he requires an interpreter.

However, Plaintiff or Defendant may retain an interpreter within certain parameters calculated to eliminate the possibility of converting the interpreter into an advocate or witness. Should either party wish to retain an interpreter, the parties shall first meet and confer to determine whether both parties consent to the presence of the interpreter given these parameters. If the parties cannot reach a resolution on this issue, they may file an appropriate motion with the Court.

Additionally, the Court is not convinced that it should permit counsel to attend the examination so that Plaintiff's counsel can better prepare for cross-examination of Dr. Spodak. As recognized by this Court in *Dziwanoski*, by attending the examination, counsel may "mak[e]

himself in effect a witness, with the difficulties which are likely to arise when an attorney asks questions on cross-examination based upon his own observations, and the possibility that he may wish to take the stand and thereby disqualify himself from completing the trial as the attorney." *Dziwanoski*, 26 F.R.D. at 598 (citations omitted); *cf.* Md. Lawyers' Rules of Prof'l Conduct 3.7. Plaintiff's counsel can prepare for his cross-examination of Dr. Spodak by speaking with Plaintiff about the mental examination and analyzing Dr. Spodak's report. *Cf. Dziwanoski*, 26 F.R.D. at 598 ("If counsel is concerned about the adequacy of the examination, he may . . . ask his own client questions about it, cross-examine the doctor, and, of course, inspect the report which he is entitled to demand under Rule 35."). Because Plaintiff has not articulated a compelling need or good reason for his counsel to attend the examination, the Court denies his request.

### III. The Court will not Deny the Motion based on Plaintiff's Request for Timely Production of Dr. Spodak's Report and Other Documents.

Finally, Plaintiff argues that the Court should order Dr. Spodak to provide his "report, tests and other documents . . . with sufficient time [for Plaintiff] to depose Dr. Spodak under the current Scheduling Order." Pl.'s Mem. 2. Under the recently-revised Scheduling Order, Plaintiff must depose Defendants' experts by October 31, 2012. August 3, 2012, Order (ECF No. 86). The parties have not informed the Court when the mental examination will take place, and what discovery was propounded regarding production of "tests and other documents" by expert witnesses. Thus, in deciding the Motion, the Court will not alter or set additional discovery deadlines. However, the Court is confident that the parties can work together to determine appropriate deadlines for Dr. Spodak to provide his expert report and other properly discoverable information to Plaintiff. If the parties are unable to do so, Plaintiff should file an appropriate motion in accordance with the Federal and Local Rules.

## **CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART the Motion. The Court orders Plaintiff to submit to a mental examination by Dr. Spodak concerning the nature, cause, and extent of Plaintiff's alleged mental conditions, and as further detailed in the Evaluation Protocol. The examination shall take place at Dr. Spodak's offices, or another location mutually agreed upon by the parties. The examination shall not last longer than eight hours and shall take place on a mutually agreed upon date and time, but no later than September 14, 2012. Counsel is not permitted to attend the examination.

August 23, 2012                                                        /s/
                                                                Charles B. Day
                                                                United States Magistrate Judge

CBD/mkh