IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| EDMOND MACHIE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| v. | * | Case No. 09-cv-2196-AW |
| | * | |
| J. THOMAS MANGER, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |

*****************************************************************************

## MEMORANDUM OPINION

Plaintiff Edmond Machie filed suit against Defendants Kye Pak and Charles Haak of the Montgomery County Police Department on July 22, 2009 based on an arrest that took place on January 11, 2008. Plaintiff alleges that Detective Pak violated his Fourth Amendment rights by falsely arresting him and that Officer Haak violated his Fourth Amendment rights by using excessive force in an arrest. Pending before the Court is Defendants' Motion for Summary Judgment on both claims, Doc. No. 95, and Plaintiff's Cross-Motion to Strike Defense Exhibits 3, 4, 6, and 8, Doc. No. 98. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons articulated below, Defendants' Motion for Summary Judgment will be **GRANTED-IN-PART** and **DENIED-IN-PART**, and Plaintiff's Cross-Motion to Strike will be **DENIED.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2008, a bank robbery took place at a branch of BB&T on Georgia Avenue in Wheaton, Maryland. A suspect impersonating a security guard, working with a bank

1

employee, walked out of the bank with a large sum of money. The next day, the bank reported a theft in excess of half a million dollars. Detective Kye Pak was sent to investigate. After interviewing employees, law enforcement set up surveillance of the Olney, Maryland home of Elizabeth Tarke, a bank supervisor.

Officer Charles Haak was part of the surveillance team. On January 11, 2008, at around 6:30 p.m., the surveillance team was observing Tarke's residence in Olney. Haak witnessed Tarke get into a heated argument with David Mbom. Mbom was subsequently picked up in a Ford Explorer by a man later revealed to be Robert Tataw. Two other officers followed Tataw and Mbom to an apartment in Silver Spring, Maryland, where they witnessed Tataw carry what appeared to be a heavy duffel bag into the building. Tarke, Tataw, and Mbom became the main suspects in the robbery.

Plaintiff Edmond Machie is a citizen of Cameroon living in the United States. He lives in Arlington, VA, but at the time of the incident he also had an apartment in Silver Spring. At the time of this incident, Machie owned and drove a Ford Focus, and was an intern for the Montgomery County Police Department. On January 11, 2008, Machie called his friend Ruphin, who invited him to a building in Silver Spring where a woman operated a bar and restaurant out of her apartment. Upon arrival in his Ford Focus, Machie saw a "fat person" who invited him into the building. The "fat man" was likely Robert Tataw, who signaled to Machie according to a police officer on the scene. The officer witnessed them enter the building together. This occurred approximately two hours after officers first saw Tataw enter the building with the duffel bag. Upon entering the apartment, Machie found Ruphin, along with several other people. While in the apartment, Machie witnessed Ruphin get into an argument over twenty dollars. Following the

2

argument, Machie went home. A member of the surveillance team at the apartment witnessed the driver of a Ford Focus leave the building at the same time as the driver of the Ford Explorer that the team had followed from Tarke's residence. They left in opposite directions.

When Machie left the apartment, two law enforcement officers followed him. The officers approached Machie outside of his Silver Spring apartment, and asked for his identification and car registration. Machie showed the officers his ID and his police intern badge, along with his registration. The officers then informed Machie that they were going to search his car. Machie neither consented nor objected to the search, and the officers searched the vehicle and checked Machie's cell phone. When the officers saw Machie's police intern badge, they told Machie, "since you're police, we need your help, and it sounds like you've been some place where there was a Cameroonian, so we need your help." The officers asked Machie to come to the police station to answer questions. They informed Machie that he was not under arrest and was not under investigation. Machie agreed to help, and was driven to the Wheaton police station by the officers.

After he arrived at the station, Machie was taken into a conference room by Detective Pak. Pak did not tell Machie he was under arrest, and Machie was not handcuffed during his meeting with Pak. During the interview, two doors to the conference room were left open. Machie gave a statement to Pak, and then left the police station. The statement described Machie's evening, from his phone call with Ruphin to his encounter with police. In his deposition, Machie was asked "And at any time did Detective Pak tell you that you could not leave the room?" Machie responded "Detective Pak? No. Yes, I can leave the room." Machie spent "over an hour or two" in the conference room.

Officers were growing concerned that Machie was involved in the bank theft and would have access to the police department because of his status as a police intern. Officer Haak knew that Machie had been guided into the apartment by Tataw after Tataw carried the large duffel bag into the building. Later that evening, Machie returned to the police station to get a copy of his statement. When Machie returned, Officer Haak asked him for his police intern badge, which Machie surrendered to him. Then, under instructions from Sergeant Robert Grims, Haak arrested Machie. Grims recalls that he spoke with Detective Pak about Machie prior to the arrest. Detective Pak is listed as the arresting officer on the "On-View Criminal Arrests" report, even though he did not physically arrest Machie. The only time Detective Pak saw Machie during the arrest was when Machie and Haak walked by him in the station.

Machie claims that Haak very tightly handcuffed him and that Haak and another officer, Chief J. Thomas Manger, smashed his head into a wall during the arrest. Machie further alleges that Officer Haak turned, grabbed and pushed his arms. There is no medical evidence available detailing Machie's physical injuries, and Haak alleges that he used no force at all in arresting Machie. Machie did not request any medical attention while in the custody of law enforcement, nor did he seek medical assistance for physical injury after his release. Machie claims that he is receiving therapy for emotional issues that arose from his arrest.

Based on this incident, Machie filed suit against Pak, Haak, Manger, Commander Nancy Demme, and Montgomery County alleging false arrest, libel, slander, and "torture." Doc. No. 14. The Court granted an initial motion to dismiss all counts on May 25, 2010. Doc. No. 30. Machie then filed a motion for reconsideration as to his false arrest claim, which the Court granted on June 29, 2010. Doc. No. 34. Subsequently, Machie filed an amended complaint alleging a variety

4

of constitutional and state law tort claims against Defendants. Doc. No. 36. On November 4, 2010, the Court dismissed the vast majority of these claims, leaving only "excessive-force claims against Defendants Haak and Manger, and claims against Defendant Pak that remain somewhat ambiguous relating to seizure and interrogation without a warrant or probable cause" under 42 U.S.C. § 1983.[1] Doc. No. 42. Machie voluntarily dismissed Manger from the lawsuit on September 2, 2011. Doc. No. 56.

**II. STANDARD OF REVIEW**

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Okoli v. City of Baltimore*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

---

[1] In a footnote, Plaintiff asks the Court to "modify [its November 4, 2010] order to ensure that his full Section 1983 action relating to his unlawful arrest, the seizure and the excessive force may proceed against both defendants to address the important rights and issues in this case." Doc. No. 98-1, at 9. The Court declines to do so. Plaintiff waited two and a half years before seeking to expand the scope of this litigation without providing any explanation for this delay. Plaintiff had every opportunity to raise this argument as discovery was ongoing, and he declined to do so. The Court will not permit him to expand this litigation now, after a motion for summary judgment has been filed. As such, the only claims available to Plaintiff are a false arrest claim against Detective Pak, and an excessive force claim against Officer Haak. Doc. No. 42.

5

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Furthermore, a nonmoving party cannot defeat summary judgment with merely a scintilla of evidence. *See American Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009).

**III. ANALYSIS**

**A. Plaintiff's Cross-Motion to Strike Defendants' Exhibits 3, 4, 6, and 8**

As a preliminary matter, Plaintiff moves to strike Defendants' exhibits 3, 4, 6, and 8. Exhibits 3 and 6 are Officer Haak and Detective Pak's answers to interrogatories, respectively. Doc. Nos. 95-5, 95-8. Exhibits 4 and 8 are affidavits provided by law enforcement officials who are not named Defendants in the instant litigation. Doc. Nos. 95-6, 95-10. Plaintiff asserts that the Court must strike these exhibits because they are not based on personal knowledge pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure.

As to exhibits 4 and 8, Plaintiff argues that because the initial documents submitted to the Court indicated that the information in the affidavits was based on "knowledge, information, and belief," and not exclusively on "personal knowledge," they must be stricken. Doc. Nos. 95-6, 95-

6

10. It is clear from the substance of the affidavits that they were, in fact, made on the affiants' personal knowledge. Nonetheless, these documents were resubmitted to the Court, with the updated documents indicating that the information contained in the affidavits was "based upon [affiant's] own personal knowledge." Doc. Nos. 99-4, 99-5. In a footnote, Plaintiff suggests that Defendants should not be permitted to resubmit the documents. The Court disagrees. It would not be in the interest of justice to exclude highly relevant and probative information on summary judgment merely because of an alleged technical error in the initial filing. Plaintiff cites no authority to support his conclusion, and he does not provide the Court with any countervailing interest that would be served by disallowing the updated affidavits. Because the updated affidavits are based solely on personal knowledge, the Court declines to strike them. *See El v. Tek Sys., Inc.*, 311 F. Supp. 2d 516, 518 (E.D. Va. 2002).

As to Defendants' responses to interrogatories, the information provided in exhibits 3 and 6 is largely duplicative of information found elsewhere on the record. As such, the Court does not rely on them in coming to its conclusions, and there is no need to consider Plaintiff's motion to strike them. For these reasons, Plaintiff's Cross-Motion to Strike will be denied.

**B. Claims against Detective Pak**

Plaintiff argues that three distinct seizures occurred in the course of events leading to Machie's arrest, each of which allegedly violated the Fourth Amendment. The first allegedly occurred when law enforcement officers approached Machie outside of his home; the second allegedly occurred when Detective Pak questioned Machie at the police station; and the third allegedly occurred when Machie was arrested by Officer Haak. Each of these alleged seizures must be assessed under 42 U.S.C. § 1983, which states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The Court will address two issues surrounding the alleged seizures. First, the Court will assess whether Detective Pak was personally involved in the alleged seizures such that he can be held liable under § 1983. Second, the Court will address whether the alleged seizures actually constituted seizures under the Fourth Amendment.

**1. Detective Pak's personal involvement**

Under § 1983, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Consequently, the defendant "must have had personal knowledge of and involvement in the alleged deprivation of [a plaintiff]'s rights in order to be liable." *Id*. "To be liable under this section, plaintiffs must prove that the defendants directed or personally participated in the deprivation of plaintiffs' rights." *Bennett v. Gravelle*, 323 F. Supp. 203, 215 (D. Md. 1971).

Plaintiff asserts that Detective Pak was personally involved in his arrest. Plaintiff relies on the fact that Pak is listed as the arresting officer on the "On-View Criminal Arrests" report, that Pak filled out the statement of probable cause for the arrest, and that Sergeant Grims consulted with Pak about Machie prior to the arrest. None of this evidence, however, permits a reasonable inference that Pak was personally involved.

In *De Ventura v. Keith*, 169 F. Supp. 2d 390, 393-95 (D. Md. 2001), the defendant was a police officer who called for other officers to go to the plaintiff's home after witnessing the

8

plaintiff's husband driving erratically. The plaintiff then asserted that the officers who appeared at her doorstep conducted an unlawful seizure in violation of the Fourth Amendment. *Id*. Judge Chasanow held that despite the fact that the defendant affirmatively directed the officers to the plaintiff's home, there was no genuine issue of material fact surrounding the defendant's personal involvement. The court granted summary judgment in favor of the defendant. *Id*. at 395.

Here, the evidence does not even show that Detective Pak took the same kind of affirmative action taken by the defendant in *De Ventura*. The undisputed evidence demonstrates that Sergeant Grims directed Haak to arrest Machie. Doc. No. 95-4, at 41:15-42:14. While Pak had a conversation with Sergeant Grims about Machie prior to Machie's arrest, there is no testimony or evidence in the record suggesting that Pak made the ultimate decision to arrest Machie. Doc. No. 98-7, at 95:11-99:11. In fact, Sergeant Grims, whose testimony Plaintiff relies upon, explained that there were "two or three" other officers engaged in the discussion about Machie. *Id*. Sergeant Grims testified as follows: "In this situation, people met and at some point a decision was made to arrest Mr. Machie. I can say that I backed the decision and told officers to arrest him." *Id*. Hence, Grims' testimony does not support a conclusion that Pak made the decision to arrest Machie. On the other hand, Detective Pak testified that he did not know that Machie was going to be arrested until he saw Machie in handcuffs. Doc. No. 95-3, at 95:10-13. Nothing in the record contradicts Detective Pak's testimony.

The Plaintiff further cites the statement of probable cause and the arrest report as evidence of Detective Pak's involvement. However, the statement of probable cause was written well after Machie was arrested, so it does not demonstrate that Pak directed the arrest. Doc. No. 95-15. Second, neither the arrest form nor the statement of probable cause contradict the undisputed testimony of Officer Haak and Sergeant Grims that Haak physically conducted the

arrest after he was instructed to do so by Grims. Doc. No. 98-7, at 95:11-99:11; Doc. No. 95-4, at 41:15-42:14. Hence, the evidence, as in *De Ventura*, does not support a conclusion that Detective Pak directed Officer Haak to arrest Machie.

Moreover, the record provides no support for a conclusion that Detective Pak had any personal involvement in Machie's encounter with police outside of his apartment. Any such conclusion would be based solely on Pak's status as "lead investigator," and not on the actions he took in that capacity. Because 42 U.S.C. § 1983 does not permit liability on a theory of *respondeat superior*, Pak cannot be held liable for any § 1983 claim stemming from Machie's initial encounter with law enforcement. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of respondeat superior has no application under [§ 1983].").

Nonetheless, the Fourth Circuit recognizes that law enforcement officers have "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer may be liable under § 1983 on a theory of bystander liability if he: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204 (footnotes omitted). The doctrine recognizes that bystander officers are only obliged to act "in certain limited situations." *Id.*

Plaintiff has failed to present a genuine issue of material fact that Detective Pak knew that Machie's constitutional rights were violated. The evidence indicates that Detective Pak believed that there was probable cause to arrest Machie after the arrest, as he authored the statement of probable cause. Doc. No. 95-15. The only evidence put forth by Plaintiff pertaining

to Detective Pak's knowledge is Pak's statement that there was no probable cause to arrest Machie when he left the interview room at the police station about two hours earlier. Doc. No. 98-5, at 83:3-17. Plaintiff's argument that this statement implicates Pak, however, is negated by Pak's additional, undisputed statement that Sergeant Grims discovered new evidence in the intervening hour or two that he believed established probable cause. Doc. No. 98-5, at 84:10-16. Moreover, given that Detective Pak was not present for the actual arrest and merely witnessed Machie walking by him in handcuffs, Detective Pak had no knowledge of the circumstances of the arrest. Given the lack of evidence demonstrating Pak's knowledge, the Court must reject Plaintiff's theory of bystander liability as a matter of law. Consequently, the only alleged seizure for which Pak may bear any legal responsibility under § 1983 is the second alleged seizure, stemming from Detective Pak's questioning of Machie.

### 2. "Seizure" under the Fourth Amendment

"[I]t is only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen that we may conclude that a seizure has occurred." *Schultz v. Braga*, 455 F.3d 470, 480 (4th Cir. 2006) (internal quotations omitted). In defining a restraint on liberty, the Fourth Circuit explained:

> A seizure implicating the Fourth Amendment does not occur simply because a police officer approaches an individual and asks a few questions. . . . Rather, such a seizure occurs when a police officer terminates or restrains a [person's] freedom of movement and, in view of the totality of the circumstances surrounding the stop, a reasonable person would not feel free to leave or otherwise terminate the encounter.

*United States v. Watkins*, 378 F. App'x 328, 329 (4th Cir. 2010). The Fourth Circuit has further noted that the right of the police to ask questions is of crucial importance:

11

> If every encounter between a citizen and a police officer constituted a seizure, it would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. Simple questioning by police is an important tool for the effective enforcement of criminal laws. Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished.

*United States v. Flowers*, 912 F.2d 707, 710 (4th Cir. 1990) (citations and internal quotations omitted). Hence, Plaintiff needs to establish more than mere questioning at a police station to implicate the Fourth Amendment.

First, Plaintiff asserts that his decision to come to the police station was involuntary due to the behavior of the officers who confronted him in front of his apartment. As an initial matter, Plaintiff has put forward no evidence suggesting that this behavior is traceable to Detective Pak. Beyond that, however, the undisputed evidence in this case reveals that Machie voluntarily went to the police station to answer questions. While the police conducted a search of Machie's car and cellular phone, Machie never gave any indication that he objected to the search. Doc. No. 98-3, at 245:15-246:2. Moreover, when the officers were talking to Machie, they never told him that he had to come down to the police station. They merely told Machie, "since you're police, we need your help," to which Machie responded, "okay, as far as the police are, I'm listed as an infrograd, so I'm cooperating with the police – with all the law enforcement." *Id*. at 247:7-21. In addition, the undisputed evidence reveals that Machie was driven to the station by the officers because he had been drinking. *Id*. at 247:22-248:1. In the process of taking Machie to the police station, a law enforcement officer informed Machie, "You are not under arrest. You are not under investigation." *Id*. at 248:2-9. Machie was then told that an officer would drive him back to his car once he was done. *Id*. at 248:10-13. Machie sat in the front seat of the police car for the ride to the station. *Id*. at 248:14-16. At this point, Machie considered himself to be "helping" the

12

police. *Id*. at 249:4-14. All of this evidence indicates that this initial encounter with law enforcement, prior to Machie's arrival at the police station, constituted "simple questioning by police" to which Machie voluntarily submitted. *See Flowers*, 912 F.2d at 710.

Plaintiff argues that because law enforcement officials held onto his identification, their actions constituted a seizure. Indeed, "the retention of a citizen's identification or other personal property or effects is highly material under the totality of the circumstances analysis." *United States v. Black*, 707 F.3d 531, 538 (4th Cir. 2013) (citation and internal quotations omitted). Nonetheless, retention of personal effects is not dispositive. *Id*. In *Black*, the officers had already frisked two of Black's compatriots, indicating that Black was not free to leave until the officers did the same to him. *Id*. Moreover, in *Black*, seven uniformed officers reported to the scene; such a large number would likely have intimidated a reasonable person in Black's situation. *Id*. Here, there was no such indication that Machie was compelled to stay; officers made no physical contact with anyone during the course of their interaction with Machie, and there were far fewer law enforcement officers at Machie's residence. Further, the instant case is distinct from *United States v. Jones*, 678 F.3d 293, 301 (4th Cir. 2012), inasmuch as there is no evidence suggesting that the officers blocked Machie's car in an effort to prevent him from leaving. Hence, in light of the totality of the undisputed evidence, the Court concludes that Machie's initial encounter with police did not constitute a seizure.

Nor did Detective Pak's questioning of Machie constitute a seizure. The undisputed evidence indicates that Machie was free to leave the interview at any time. Machie gave a statement to Pak in a conference room with two open doors, not a closed interrogation room. Doc. No. 95-3, at 47:4-12. When Machie was asked in his deposition whether Detective Pak told

13

him that he could not leave the room, Machie responded: "Detective Pak? No. Yes, I can leave the room." By Plaintiff's own admission, he could have left at any time. Detective Pak, much like the officers who initially interacted with Machie, never informed Machie that he was under arrest or under investigation. Doc. No. 95-12, at 263:7-13.

Plaintiff further argues that because Machie did not have his car at the police station, he could not have left. The Fourth Circuit has soundly rejected similar arguments, holding that questioning does not constitute a seizure unless the subject is "restrained by the conduct of the officers." *Flowers*, 912 F.2d at 711. For example, in *Flowers*, where officers questioned the plaintiff on a bus, and where the plaintiff may have been stranded had he gotten off the bus, the Fourth Circuit found that there was no seizure because an external factor, and not the officers' presence, compelled the plaintiff to stay. *Id.* at 711-12. Moreover, Machie admits that he was told that he would be given a ride home from the police station. Doc. No. 98-3, at 248:10-13. From this, it is clear that Machie was not trapped at the police station. Plaintiff has therefore failed to raise a genuine issue of material fact concerning the interview with Detective Pak.

Ultimately, the Supreme Court has found that,

> [C]ircumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 446 U.S. 544, 555 (1980). None of those factors weigh in favor of Plaintiff's claim in the instant action. Machie was not faced with an onslaught of police officers, none of the officers who interacted with Machie brandished a weapon, Machie was never physically touched, and the officers' language never evinced hostility.

In conclusion, the first and third alleged seizures were not traceable to the behavior of Detective Pak. The second alleged seizure, Detective Pak's questioning of Machie, was not a seizure for Fourth Amendment purposes because Machie, as he freely admits, was free to leave at any time. As a result, the Court will grant Defendants' Motion for Summary Judgment as it pertains to the false arrest claims against Detective Pak.

**C. Excessive force claim against Officer Haak**

"Claims that law enforcement officers used excessive force when making an arrest 'should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'" *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson*, 247 F.3d at 129. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). Moreover, reasonableness analysis necessitates "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Hayes v. City of Seat Pleasant, Md.*, 469 F. App'x 169, 173 (4th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

Here, Plaintiff asserts that Officer Haak grabbed and twisted his arms, tightly handcuffed him, and smashed his head into a wall, even though he was not resisting arrest. Doc. No. 98-3, at 206:23-211:22, 339:3-340:1. Machie further asserts that this has caused him emotional damage,

necessitating the employment of a psychotherapist, though he has presented no evidence of any physical damage. Doc. No. 95-12, at 308:4-309:25. Defendants point to the testimony of three officers indicating that the arrest was routine and no force was used. Doc. No. 95-3, at 157:13-21; Doc. No. 95-4, at 54:7-10; Doc. No. 95-10 ¶ 8. Because there are conflicting accounts of what happened when Machie was arrested, whether excessive force was used presents a credibility determination for the jury. It is not the place of the Court to determine on summary judgment which account is more credible. *See Houlsey v. Holquist*, 879 F. Supp. 2d 472, 481 (D. Md. 2011) ("The issue of whether a right was violated rests on conflicting narratives that can only be reconciled by a jury.").

Defendants assert that because this Court was unwilling to consider Officer Haak's alleged violent handcuffing of Machie to be excessive force on its own, the Court must dismiss the claim. However, Machie has now proffered evidence that Officer Haak smashed his head into a wall in effectuating the arrest. While the violent handcuffing and the twisting of Machie's arm, on its own, may be insufficient to constitute excessive force, the Court cannot view each instance of the use force in a vacuum. *See Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) ("Carter's basis for her excessive force claim-that her handcuffs were too tight and that an officer pushed her legs as she got into the police car-is so insubstantial that it cannot as a matter of law support her claim under . . . the Fourth Amendment."). The violent handcuffing, the twisting of Machie's arm, and the smashing of Machie's head into a wall, when taken together, may constitute a valid claim of excessive force against Officer Haak, especially given the undisputed fact that Machie did not resist arrest.

The alleged facts in the instant action, when viewed in the light most favorable to Machie, are similar to *Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993). In *Kane*, the parties agreed that the plaintiff attempted to resist arrest. 987 F.2d at 1008. The plaintiff claimed that the defendant slammed her head into the pavement in the process of arresting her, and the Fourth Circuit held that this created a genuine issue of material fact as to the use of excessive force. *Id*. Here, Machie claims that Officer Haak slammed his head into a wall, and the parties agree that Machie never resisted arrest. Because Machie never resisted, Officer Haak was operating in less dire circumstances than the officer in *Kane*, where a genuine issue of material fact existed. Hence, because the action allegedly taken by Officer Haak is similar to the action taken by the officer in *Kane*, there exists a genuine dispute of material fact over Officer Haak's use of force.

The Court also concludes that Plaintiff's excessive force claim against Haak is not barred by qualified immunity. The doctrine of qualified immunity provides immunity to law enforcement officers under 42 U.S. § 1983, unless the right the officers violated is "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 648 (1987). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. As to excessive force in general, the right to be free from an arrest made with objectively unreasonable force was clearly established in *Graham*. 490 U.S. at 395. "[T]he salient question is whether the state of the law at the time of the events at issue gave the officer fair warning that his alleged treatment of the plaintiff was unconstitutional. . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003) (citations and internal quotations omitted). "[I]n an obvious case, the[] [*Graham*]

17

standards can clearly establish the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

Both parties acknowledge that Machie was not resisting arrest or attempting to evade police in any way. The Court holds that it is obvious that the Fourth Amendment shields a non-resisting arrestee from having his head slammed into a wall by the arresting officer. This is especially true given the circumstances of Machie's arrest. The arrest took place in a police station, a place of safety and security for police officers. The officers in the station greatly outnumbered Machie, and there were no other potential suspects in the vicinity. Given these facts, the Fourth Amendment clearly and obviously protected Machie from the conduct he alleges here. Moreover, such a right was clearly established in the Fourth Circuit by 2009. *See, e.g.*, *Kane*, 987 F.2d at 1006-07 (holding that the district court properly denied summary judgment on a § 1983 excessive force claim where an officer slammed the plaintiff's head into pavement); *Buchanan*, 325 F.3d at 528-31 (denying qualified immunity where an officer knocked the plaintiff to the floor, and proceeded to jump on him).

Finally, "[w]hen resolution of a case depends on determining what actually happened, the issue is inappropriate for resolution by summary judgment." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 179-80 (4th Cir. 1998) (internal quotations omitted). Here, there is a significant factual dispute, and it is the role of the jury to determine what exactly happened during Machie's arrest. Accordingly, the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim against Officer Haak.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be **GRANTED-IN-PART** and **DENIED-IN-PART**, and Plaintiff's Cross-Motion to Strike will be **DENIED.** A separate Order follows.

| July 2, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |